UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

PUGET BIOVENTURES, LLC,                  )
                                         )
        Plaintiff,                       )
                                         )
        v.                               )        Case No. 3:17-CV-502 JD
                                         )
BIOMET ORTHOPEDICS LLC, and              )
BIOMET MANUFACTURING, LLC,               )
                                         )
        Defendants.                      )

**OPINION AND ORDER**

Plaintiff Puget BioVentures, LLC and Defendants Biomet Orthopedics LLC and Biomet

Manufacturing, LLC (collectively, "Biomet") are no strangers to one another. The two are

currently locked in litigation before this Court in Case No. 3:10-cv-465 (the "2010 case").

Hudson Surgical Design, Inc. initiated that lawsuit in the Northern District of Illinois on July 19,

2010, alleging infringement of its patent for "Methods and Apparatus for Femoral and Tibial

Resection," U.S. Patent No. 7,344,541 (the "'541 patent"). It amended the complaint two months

later, in September. On motion, the case was then transferred to this Court in November 2010

and then ordered stayed in December 2010, pending reexamination of the '541 patent by the

United States Patent and Trademark Office. The stay was lifted in August 2017.

While the 2010 case remained stayed, several important events occurred. First, the Patent

Office issued a continuation patent to Hudson Surgical, entitled "Methods and Apparatus for

Orthopedic Implants," U.S. Patent No. 7,967,822 (the "'822 patent"), on June 28, 2011. The '541

patent is the "parent" of the '822 patent. Second, in January 2013, Hudson Surgical assigned

ownership of the '541 patent to Puget. At some point, Puget also obtained right, title, and interest

in the '822 patent from Hudson Surgical.[1] [DE 1 ¶ 7] And third, Puget filed the instant lawsuit against Biomet on June 26, 2017, alleging that Biomet has and continues to infringe upon the '822 patent.

Before the Court is Biomet's Motion to Dismiss Puget's complaint. [DE 23] For the reasons stated herein, the Court will grant Biomet's request to dismiss Puget's claims relating to patent claims 2, 6, and 15 as ineligible. The Court will deny all other requested relief.

## FACTUAL ALLEGATIONS

As stated above, the '822 patent issued to Hudson Surgical on June 28, 2011. The '822 patent covers a surgical procedure and related apparatuses that seek to reduce the margin of error associated with using oscillating sawblade-based resection systems in total knee replacements. [DE 1-1 at 49 (the '822 patent)] In a nutshell, the invention is meant to take the pressure off the surgeon with an apparatus that positions a cutting guide in such a way that the surgeon need only make a single resection of the bone. *Id.* Only a few days after its issuance, Hudson Surgical identified the '822 patent to Biomet in a letter. [DE 1-2] The letter advised Biomet that Hudson Surgical believed the '822 patent covered several of Biomet's products, and that Biomet would need a license to continue making, providing, offering, selling, or assisting in the use of said products. *Id.*

Despite the warning in Hudson Surgical's letter, Biomet did not acquire or obtain a license to any rights in the '822 patent. [DE 1 ¶¶ 28, 55] Instead, Biomet continued to manufacture, offer, sell, or otherwise make its potentially infringing products available, and in so doing, allegedly committed direct infringement of the '822 patent (specifically, patent claims 2,

---

[1] Although this information comes from Puget's *allegation* in its complaint, Biomet has not challenged Puget's ownership in the instant motion.

6, and 15). *Id.* ¶ 35. These products include Biomet's Vanguard and Microplasty knee replacement systems. *Id.*

Furthermore, and with knowledge of the '822 patent, Biomet provided manuals, surgical guides, written instructions, and other training materials in conjunction with the sale of its Vanguard and Microplasty products. *Id.* ¶¶ 37, 38. Puget alleges that this conduct represents an intentional effort to induce orthopedic surgeons to directly infringe on the '822 patent (specifically, patent claims 1, 5, and 14). *Id.* The surgeons themselves then indeed followed Biomet's instructions, which allegedly recite claim 5 of the '822 patent, in order to perform knee surgeries in a manner that directly infringes upon the '822 patent. *Id.* ¶¶ 40-46.

Puget additionally alleges that Biomet, again with knowledge of the '822 patent, committed contributory infringement by making, offering, and selling a component of the '822 patent: the tibial resection block. *Id.* ¶¶ 47-49. Surgeons then used the tibial resection block to directly infringe on the '822 patent. *Id.* ¶ 48. Finally, Puget alleges that all of Biomet's purported direct and indirect infringement has been willful. *Id.* ¶ 51.

### STANDARD

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative

level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

### DISCUSSION

Biomet argues for dismissal on three grounds. Most broadly, it contends that Puget is precluded altogether from bringing the instant lawsuit because Puget impermissibly split its claims with those in the 2010 case. Biomet also argues that claims 2, 6, and 15 of the '822 patent are patent ineligible, and therefore Puget cannot allege that Biomet directly infringed on those claims. Finally, Biomet maintains that the allegations of infringement are insufficiently pled.

### A.     Claim Splitting

Biomet believes that Puget has impermissibly engaged in "claim splitting" and urges the Court to preclude Puget from bringing this case. But because Biomet does not persuade the Court that the '822 and '541 patents contain "essentially the same" claims, its argument fails.

Claim *preclusion*, as a general concept, applies where: (1) the parties are the same; (2) there has been a final judgment on the merits of a claim; and (3) the second claim is based on the same set of "transactional facts" as the first claim. *See Jet, Inc. v. Sewage Aeration Sys.*, 223 F. 3d 1360, 1362 (Fed. Cir. 2000) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979)). Similarly, "[t]he prohibition against claim *splitting* is application of familiar claim preclusion principles to two actions that are pending simultaneously but neither has reached final judgment." *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, 2011 U.S. Dist. LEXIS 81640, *19

(N.D. Ill. July 26, 2011) (emphasis added and citing Charles Alan Wright & Arthur Miller,

Federal Practice and Procedure § 4406 (2d ed. 2011) (noting that dismissals based on claim

splitting are driven by docket management considerations)). "Courts will dismiss a second suit

pending between the same parties for claim splitting if the second suit would be barred by claim

preclusion if it is assumed the first suit reached final judgment." *Id.* (citing as examples *Single

Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1059 (S.D. Cal. 2007); *Kim v. Sara

Lee Bakery Grp., Inc.*, 412 F. Supp. 2d 929, 941-42 (N.D. Ill. 2006) ("It is well established,

under the doctrine of claim splitting, that a party cannot avoid the effects of *res judicata* by

splitting her cause of action into separate grounds of recovery and then raising the separate

grounds in successive suits. Rather, a party must bring in one action all legal theories arising out

of the same transaction or series of transactions.")).

In the patent context, claim preclusion largely hinges on the similarity of the patents at

issue in the two parallel litigations. As such, regional circuit law applies to general principles of

claim preclusion or claim splitting, whereas Federal Circuit precedent governs "[w]hether two

claims for patent infringement are identical" because it is a question "particular to patent law."

*Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008); *see also Hallco Mfg. Co. v.

Foster*, 256 F.3d 1290, 1294 (Fed. Cir. 2001) (applying Federal Circuit precedent to question of

claim preclusion under patent law).

Biomet argues that Puget's current lawsuit impermissibly splits Puget's causes of action

because the accused products in this lawsuit overlap with those at issue in the 2010 case. [DE 24

at 20-24] According to Biomet, "[t]he '822 patent is ... a direct continuation of the previously

asserted '541 patent, and they share the same specification." *Id.* at 23. Under the Federal

Circuit's transactional test for comparing two causes of action for preclusion purposes, Biomet

insists that the patent claims here relate to the same set of transactions as those litigated in the 2010 case and should therefore be barred. To support its theory, Biomet relies heavily on the filing of a terminal disclaimer during the prosecution of the '822 patent as indicative that the claims asserted here are "similar in every meaningful way" to those involved in the 2010 case. *Id.* Biomet cites extensively to *SimpleAir, Inc. v. Google Inc.*, 204 F. Supp. 3d 908 (E.D. Tex. 2016). Therein, the district court held that claim preclusion barred the plaintiff from bringing its action based predominantly on the filing of terminal disclaimers. *Id.* at 913-14 ("The factual overlap between this and the prior litigations is amplified by the terminal disclaimers that SimpleAir filed to overcome a double-patenting rejection of its continuation patents.").

Unfortunately for Biomet, the Federal Circuit vacated the district court's opinion after briefing on the instant motion closed, and in doing so specifically rejected the lower court's reasoning that a terminal disclaimer implies that a continuation patent is essentially the same as its parent. *See SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160 (Fed. Cir. 2018) ("[Our] precedent is inconsistent with the critical premise of the district court that filing a terminal disclaimer during prosecution of a continuation patent implies that the continuation patent is patentably indistinct from its parent."). Based on the Federal Circuit's holding, the Court must reject Biomet's premise that the existence of a terminal disclaimer in this case indicates that the '822 and '541 patents are patentably indistinct, and that the instant lawsuit must therefore be dismissed in its entirety.

Puget, of course, quickly brought the Federal Circuit's *SimpleAir* opinion to this Court's attention [DE 31], but the appellate court's decision is not entirely helpful to Puget for at least two reasons. First, the Federal Circuit confirmed that whether a particular cause of action in a patent case is the same as another cause of action is determined by the transactional facts from

which the cause of action arises (i.e., the asserted patents and the accused activity). 884 F.3d at 1165. In other words, when comparing patent suits, "[i]f the overlap between the transactional facts of the suits is substantial, the later action should ordinarily be precluded." *Id.* This conflicts with Puget's rigid position that it could not have engaged in claim splitting on the basis that "[e]ach patent asserted raises an independent and distinct cause of action." *Kearns v. Gen. Motors Corp.*, 94 F.3d 1553, 1555 (Fed. Cir. 1996). Even though the Federal Circuit in *SimpleAir* "[did] not interpret the general statement in *Kearns* … to be in conflict with *general* claim preclusion principles," the appellate court noted that, in *Kearns*, the court relied on procedural inadequacies in the earlier litigation to determine that claim preclusion did not apply. 884 F.3d at 1166 (emphasis added). In its own way, the court in *Kearns* engaged in the same sort of transactional comparison that Biomet advocates. Thus, contrary to what Puget advances, it cannot escape preclusion merely because the '822 and '541 patents are not literally the same patent. The bottom line is that "[w]hile '*[o]rdinarily*' different patents will raise different causes of action, that factor is not dispositive and does not substitute for the transactional approach consistently followed by [the Federal Circuit]." *SimpleAir*, 884 F.3d at 1166 (emphasis added and citations omitted).

Second, while the Federal Circuit in *SimpleAir* rejected the district court's overreliance on the existence of a terminal disclaimer, it nonetheless noted that "a terminal disclaimer is still very relevant" to the inquiry of whether "a child patent involves the same cause of action as its parent." 884 F.3d at 1168. So, the fact that a terminal disclaimer was filed during the prosecution of Puget's '822 patent is not completely without impact.

Nonetheless, terminal disclaimers remain part of a broader *inquiry* into claim preclusion, one which "requires comparing the patents' claims along with other relevant transactional facts."

*Id.* (remanding case so that the district court could compare the patents' claims where it did not do so on first examination). Biomet here does not persuade the Court that the instant litigation surrounding the '822 patent sufficiently overlaps with and is precluded by the causes of action found in the 2010 case to warrant dismissal.[2] Biomet simply states that the '822 patent "*involves the same total knee arthroplasty claims as the '541 patent and, like the '541 patent, claims exclusively methods—no tools or apparatuses.*" [DE 24 at 9 (emphasis added)] Biomet then later maintains that the '822 and '541 patents share the same specification, and that "the asserted patent claims here are *similar* in every meaningful way to the patent claims asserted in the [2010] case." *Id.* at 29 (emphasis added). These excerpts represent the entirety of Biomet's attempted comparison.

Claims between different asserted patents must be "essentially the same" for preclusion to apply. *SimpleAir*, 884 F.3d at 1167 (quoting *Acumed*, 525 F.3d at 1324). Biomet's broad assertions that the '822 patent "involves" the same claims as the '541 patent, and that the patents' claims are "similar in every meaningful way" do nothing to advance the required transactional comparison. They might, for example, constitute a sufficient comparison if the '822 patent involved reexamined rather than continuation claims. In *Senju Pharm. Co. v. Apotex Inc.*, the Federal Circuit ruled that "it can be assumed that the reexamined claims will be a subset of the original claims and that no new cause of action will be created." 746 F.3d 1344, 1353 (Fed. Cir. 2014). This is because "reexamination does not involve the issuance of a new patent, and reexamined claims cannot be broader than the original claims." *Ferring B.V. v. Actavis, Inc.*, No. 3:13-cv-477, 2014 U.S. Dist. LEXIS 100368, **7-9 (D. Nev. July 23, 2014) (discussing *Senju*).

---

[2] The Court is mindful of the fact that Biomet briefed the issue of claim splitting prior to the Federal Circuit's decision in *SimpleAir*, and so it could not have benefited from the appellate court's emphasis on the need to compare the patent claims. However, even when alerted to the Federal Circuit's opinion, Biomet rested on the content of its motion as sufficient. [DE 32 at 3]

Defendants rely on *Senju* and another case involving reexamined claims, *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012), and would extend those cases to apply against the '822 patent, which is a continuation of the '541 patent. But the "assertion of each new continuation patent does not necessarily create a new cause of action." *SimpleAir*, 884 F.3d at 1169. Thus, whether the '822 continuation patent "present[s] the same *cause of action* as previously litigated depends on the *scope of [its] claims* …." *Id.* (emphasis added). A continuation patent involves the issuance of a new patent altogether, which, importantly, can include *broadened* claims. *Ferring*, 2014 U.S. Dist. LEXIS 100368 at *9. Biomet makes no attempt to show whether the '822 patent's claims are broader than, solely inclusive of, or identical to (and not generically "involving" or "similar to") the '541 patent's claims, and the Court will not construct Biomet's arguments for it. Therefore, "because continuation claims, unlike reexamined claims, are not likely to 'be a subset of the original claims,' … the Court cannot simply assume that such is the case," and Biomet's basic comparison falls short. *Id.* at **10-11; *see also SimpleAir*, 884 F.3d at 1166-67 (distinguishing reexamined claims and finding transactional comparison of continuation claims lacking).

Relatedly, Biomet argues that Puget should have amended its complaint in the 2010 case to reflect the '822 patent rather than file a second lawsuit. But while Puget *could have* amended its pleadings once the stay was lifted in the 2010 case, it was not required to add the patent that issued after the 2010 case began. *See Trading Techs.*, 2011 U.S. Dist. LEXIS 81640 at **24-25; *Gillig v. Nike, Inc.*, 602 F.3d 1354, 1363 (Fed. Cir. 2010) (holding claim preclusion does not apply to "new rights acquired during the action which might have been, but which were not, litigated" and "[a] plaintiff may seek leave to file a supplemental pleading to assert those claims,

but the doctrine of *res judicata* does not punish a plaintiff for exercising the option not to supplement the pleadings with an after-acquired claim.").

Claim preclusion implicates both "the weighty policies of judicial economy and fairness to parties." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). It "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown v. Felsen*, 442 U.S. 127, 131 (1979). However, claim preclusion "shields the fraud and the cheat as well as the honest person," and "therefore is to be invoked only after careful inquiry." *Id.* at 132. Biomet's main argument for preclusion in the instant motion – that a continuation patent presents the same causes of action as a parent patent based on the filing of a terminal disclaimer alone – has been explicitly rejected by the Federal Circuit. Moreover, Biomet failed to provide any persuasive comparison of the '822 and '541 patents such that the Court can rule in favor of preclusion. For these and all the above reasons, the Court will reject Biomet's claim splitting argument.

## B.      Patent Eligibility of Claims 2, 6, and 15

With the issue of claim splitting out of the way, the Court now turns to Biomet's argument that claims 2, 6, and 15 of the '822 patent are patent ineligible under 35 U.S.C. § 101. Congress has defined which inventions are patentable in Section 101 of the Patent Act, which states in its entirety:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

The Patent Act defines the term "process" as "process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material." 35 U.S.C. § 100.

"Laws of nature, natural phenomena, and abstract ideas are not patentable." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012).[3] Whether a patent's claims are patent ineligible involves a two-part inquiry. First, the Court must "determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Alice Corp. Pty Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). If this first determination is met, the Court must then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 566 U.S. at 77-78).

1.      **Step One: Claims 2, 6, and 15 are Directed To an Abstract Idea.**

The first *Alice* step requires the court to consider the claims "in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). However, the Supreme Court "has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). Rather, it remains "sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Id.* The "directed to" inquiry does not "simply ask whether the claims *involve* a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions *involves* a law of nature and/or natural phenomenon—after all, they take place in the physical world." *Id.* (citing *Mayo*, 132 S. Ct. at 1293 ("For all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.")). Instead, this inquiry "applies a stage-one filter to claims, considered in light of the specification, based on whether 'their

---

[3] Laws of nature and natural phenomena are not at play here – only the concept of "abstract ideas."

character as a whole is directed to excluded subject matter.'" *Id.* at 1335 (quoting *Internet Patents*, 790 F.3d at 1346).

At step one, Biomet argues that claims 2, 6, and 15 are directed to the abstract idea of providing information and instrumentation. [DE 24 at 13-16] All three claims purport to set forth "[a] method for providing instrumentation, implants and information for a total knee arthroscopy procedure …." ['822 patent at 34:20-22, 35:58-60, 38:7-9] The claims further include the following limitations: (1) "providing a total knee arthroplasty implant and a cutting guide;"[4] and (2) "providing a surgeon with information on a method to perform the total knee arthroplasty procedure." *Id.* at 34:23-24, 34:31-32, 35:61-62, 35:66-67, 38:16-17. The remaining language in claims 2, 6, and 15 simply restates the language pertaining to the claimed methods for the knee arthroplasty procedure and claimed apparatuses contained in claims 1, 5, and 14. Thus, Biomet maintains the patent claims "are directed to no more than the abstract idea of human beings 'providing' surgical tools and knowhow, which are patent ineligible 'method[s] of organizing human activity….'" *Id.*

Puget responds that Biomet improperly premises its ineligibility arguments on small segments of the patent claims' language without considering the claims as a whole. Puget relies on *Enfish*, in which the Federal Circuit warned, "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." 822 F.3d at 1337 (citing *Alice*, 134 S. Ct. at 2354 (noting that "we tread carefully in construing this exclusionary principle [of laws of nature, natural phenomena, and abstract ideas] lest it swallow all of patent law") and *Diamond v. Diehr*, 450 U.S. 175, 189 n.12 (1981) (cautioning that overgeneralizing claims, "if carried to its extreme, make[s] all inventions

---

[4] Claim 15 differs slightly here, in that it includes simply "providing a cutting guide." ['822 patent at 38:11]

unpatentable because all inventions can be reduced to underlying principles of nature which, once known, make their implementation obvious")); *see also Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300 (Fed. Cir. 2016) ("We recognize ... that *at some level*, all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.") (emphasis in original and quotations omitted).

Puget also relies on *Verint Sys. v. Red Box Recorders, Ltd.*, in which the district court denied defendant's motion to invalidate all claims in six separate patents as ineligible under § 101. 226 F. Supp. 3d 190 (S.D.N.Y. 2016). As the court in *Verint* stated:

> Virtually every invention could be described at a high level in a few words: "A method to provide answers to questions" for a search engine; "a tool to assist a user to draft documents" for a document-processing program; "a tool to remove a cork from a container" for a battery-operated wine-bottle opener; "a beverage container that does not leak when tipped" for a thermos with a particularly nifty lid. One need only look around a room to think of many more.
>
> Similarly, virtually any invention could be described as simply addressing that which others long ago addressed: the Socratic method to acquire information; quills, pens, typewriters, to create written text; corkscrews to open wine bottles; and clay jugs with covers to prevent spills. This reductionist simplicity may obscure underlying complexity, and it may jeopardize the innovative improvements upon longstanding accomplishments that patents are intended to incent. Patent law protects the builder of a better mousetrap, even if his or her invention could be described as, simply, a mousetrap—or as a "method to catch a mouse."

*Id.* at 192.

The Court does not disagree with the principles espoused in *Enfish* and *Verint*, which caution against taking a reductionist view of the claims at issue. Nonetheless, those cases are distinguishable from the present matter. For example, the patent in *Verint* disclosed a method directed at recording telecommunications, identifying their contents as protected information, and then making them unintelligible to anyone without access to that information. 226 F. Supp. 3d at 197. The court reviewed two of the patent's claims for eligibility. The first claim recited

"[a] method of protecting information provided to an agent via a communication network" and then listed five steps comprising and necessary to *that* method (protecting information). *Id.* at 198. Similarly, the second claim recited a method for creating a computer-readable medium by listing four essential steps. *Id.* Neither claim, the district court held, was directed to an abstract idea because the claims "recite[d] concrete steps *necessary to accomplish the invention claimed*." *Id.* (emphasis added). Similarly, in *Enfish*, the Federal Circuit held that a patent for a self-referential computer table was indeed patent-eligible because its claims recited a "specific type of data structure designed to improve the way a computer stores and retrieves data in memory." 822 F.3d at 1339. Critical to the court's decision was the fact that the claims were "*specifically directed*" to the self-referential table itself. *Id.* at 1337 (emphasis added).

Here, Biomet does not present an inappropriately reductionist view of claims 2, 6, and 15. While it is certainly true that Biomet does not focus on a significant amount of the language from those claims, unlike in *Verint* and *Enfish*, none of the omitted language pertains at all to what claims 2, 6, and 15 are *claiming*: a method for *providing* instrumentation, implants and information for a total knee arthroplasty. The only parameters of this method listed in the claims are that the implants be generically "provid[ed]" and that information on the method to *perform* the surgery using those and implants (which is *not* the method claimed in 2, 6, and 15) be "provid[ed]" to "a surgeon." Even though the remaining language of claims 2, 6, and 15 obviously relates to Puget's patented surgical method, it does not describe how or in what manner information related to that surgical method will be *provided*; the remaining language merely recites the methods for various total knee replacement procedures and is not essential to the method claimed. So, it is somewhat of a misstatement for Puget to argue that these claims "are directed to *novel* methods of *providing*" instruments, implants, and instructions. [DE 28 at

17 (emphasis added)] While the apparatuses and surgical procedures disclaimed in the '822 patent may be novel, simply providing or explaining them to a surgeon or someone else, without more, is not. In that sense, the claims here are like those found to be directed to an abstract idea in *Concaten, Inc. v. Ameritrak Fleet Solutions, LLC*, 131 F. Supp. 3d 1166 (D. Colo. 2015). Therein, similar to Puget's tactic here, plaintiff characterized its patent as directed to a novel concept of "dynamic optimization or the allocation of snowplow resources in view of real time conditions." *Id.* at 1174. The court rejected plaintiff's characterization because the patent described only the idea of receiving information from plows, processing that information, and sending out instructions to the driver. *Id.* Even though the patent provided a list of possible instructions, it provided no new method for using the collected data to create "an optimal instruction for a given set of circumstances." *Id.* As in *Concaten*, the claims here set forth no novel method for providing instruments and implants with information on how to use them. *See FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094-95 (Fed. Cir. 2016) (distinguishing *Enfish* and finding that, where the claims at issue did not focus on improving an existing process but rather on an independently abstract idea, they were directed to an abstract idea); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (same).

The Court must also look to the language of the patent's specification at step one. *See Amdocs*, 841 F.3d at 1300 ("In addition to taking into consideration the approved claim constructions, we examine the claims in light of the written description."); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611-15 (Fed. Cir. 2016) (examining patent claims under *Alice* steps one and two in light of the written description). While specifications generally provide important background for understanding a patent's claims, an examination of the specification here does not alter the Court's conclusion. The specification describes the surgical method

disclosed in the patent as addressing the limitations and liabilities associated with using oscillating sawblade-based resection systems in total knee replacements. It explains that prior cutting tools have not been successful in consistently and properly locating and orienting distal femoral resections in an efficient manner. This has led to many reported instances of misaligned drill pins and poor cuts due to sawblade deflection, which leads to significant gaps in the fit between the knee implant and the supporting bone. The invention seeks to eliminate errors of these kinds by taking the pressure off the manual skill of the surgeon with an apparatus that positions a cutting guide on one side of the tibial bone, allowing the surgeon to make a single resection of the bone in a medial-to-lateral direction. While this information is all useful to help understand some of the '822 patent's claims, nothing in its specification speaks to the *provision* of the instrumentation and implants discussed therein, or of information on how to use them.

Claims 2, 6, and 15 are directed to the abstract idea of "providing" instrumentation and information on how to perform a medical procedure. Essentially, Puget disclaims its patented surgical apparatuses and methods in claims 1, 5, and 14, and then in the immediately following claims, disclaims the basic concept of "providing them," without more.

2. **Step Two: Claims 2, 6, and 15 Do Not Contain an "Inventive Concept" that Transforms the Abstract Idea into a Patent-Eligible Application.**

The fact that a claim is directed to an abstract idea does not necessarily mean it is patent ineligible under § 101. *Alice*, 134 S. Ct. at 2354 ("[A]n invention is not rendered ineligible for patent simply because it involves an abstract concept."). *Alice* requires a court to "examine the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Id*. at 2357 (internal quotation marks omitted). "Step two is 'a search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to

significantly more than a patent upon the ineligible concept itself.'" *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2355).

The parties dispute the scope of inquiry appropriate at this step, but it is limited to eligibility only. "The Court must not to [*sic*] delve into whether the patents-in-suit are invalid under §§ 102 or 103 for lack of novelty or non-obviousness—*Alice* did not strike down the statutory distinctions between eligibility under § 101 and invalidity under §§ 102 and 103." *Verint*, 226 F. Supp. 3d at 196 (citing *Parker v. Flook*, 437 U.S. 584, 588 (1978) ("This case turns entirely on the proper construction of § 101 of the Patent Act, which describes the subject matter that is eligible for patent protection. It does not involve the familiar issues of novelty and obviousness that routinely arise under §§ 102 and 103 when the validity of a patent is challenged.") (footnote omitted)); *see also* 35 U.S.C. §§ 102, 103.[5]

Puget argues that claims 2, 6, and 15 pertain to an inventive concept because "the PTAB has already found limitations requiring physical positioning of a cutting guide on only one side of the bone and cutting in a specific manner to create a resected surface to be new and novel." [DE 28 at 20-21] First, this argument ignores the significant caselaw (cited immediately above and at footnote 5, herein) making clear the distinction between patent eligibility and a patent's novelty. Second, Puget's argument at step two suffers from the same flaws discussed by the

---

[5] *See also Intellectual Ventures I*, 838 F.3d at 1315 ("Indeed, [t]he novelty of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter.") (internal quotation marks omitted); *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1284 (Fed. Cir. 2013) ("We do not therefore understand that language to be confused with novelty or nonobviousness analyses, which consider whether particular steps or physical components together constitute a new or nonobvious invention. Analyzing patent eligibility, in contrast, considers whether steps combined with a natural law or abstract idea are so insignificant, conventional, or routine as to yield a claim that effectively covers the natural law or abstract idea itself."); *Chamberlain Grp., Inc. v. Linear LLC*, 114 F.Supp.3d 614, 627 (N.D. Ill. 2015) ("Defendant's argument, however, treads too closely to allegations of novelty and obviousness.... [T]hat analysis is more appropriately addressed as a question of what constitutes the prior art and whether the [patent] claims hold any novelty[.]").

Court at step one. While the "application of abstract concepts 'to a new and useful end' [is] still patent eligible … '[s]imply appending conventional steps, specified at a high level of generality,' to a method already 'well known in the art' is not 'enough' to supply the 'inventive concept' needed to make this transformation.'" *Agri-Labs Holding LLC v. Taplogic, LLC*, --- F. Supp. 3d ---, 2018 WL 437560, *4 (N.D. Ind. Jan. 16, 2018) (citations omitted). Here, claims 2, 6, and 15 append *no* steps – let alone conventional ones – to the claimed process of providing instrumentation, implants, and information. As Biomet aptly puts it, "[n]one of claims 2, 5, and 16—nor any other related dependent claim—recite an actual method of performing arthroplasty during surgery or the tangible apparatuses or tools used in conjunction with arthroplasty. They claim just the method of 'providing instrumentation, implants and information.'" [DE 24 at 17]

Claims 2, 6, and 15 present similar problems as those addressed in *Electric Power*, 830 F.3d 1350. In that case, the Federal Circuit cited the district court's reasoning with approval as a helpful method of analyzing whether claims meet the "inventive concept" requirement and affirmed the lower court's decision to hold the pertinent claims ineligible under § 101. *Id.* at 1356. Rather than claiming a specific, concrete solution to a problem, the claims in *Electric Power* "purport[ed] to monopolize every potential solution to the problem," they sought to address ("any way of effectively monitoring multiple sources on a power grid"). *Id.* (citations to district court omitted). Similarly here, by not identifying how or to what end they seek to disclaim the process of providing surgical apparatuses and related information, claims 2, 6, and 15 fall victim to the same flaw identified in *Electric Power*. *See also Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017) (finding no inventive concepts where claims at issue failed to "cit[e] a specific way to solve a specific problem").

Based on the above, the Court does not find that claims 2, 6, and 15 contain an inventive concept that transforms their nature into a patent-eligible application of the abstract idea of providing instruments, implants, and information. Because of this, the Court finds them ineligible under 35 U.S.C. § 101. Puget's allegations that Biomet directly infringed upon these patent claims will be dismissed with prejudice.[6]

## C.    Sufficiency of Pleadings

Biomet further contests that Puget has not sufficiently pled the allegations in its complaint. Specifically, Defendants argue that Puget's allegations are lacking as to its claims of: direct infringement of claims 2, 6, and 15; induced and contributory infringement (both, forms of indirect infringement) of claims 1, 5, and 14; and willful infringement. The Court need not address the sufficiency of Puget's allegations relating to claims 2, 6, and 15, as those allegations will be dismissed for the reasons stated in the section above.

### 1.    Indirect Infringement

Puget alleges that Biomet committed two forms of indirect infringement: induced and contributory infringement. With respect to induced infringement, Puget alleges that Biomet induced surgeons to directly infringe on one or more claims of the '822 patent, and that Biomet should be held liable on that basis. Induced infringement occurs when a party "actively induces infringement of a patent." 35 U.S.C. § 271(b). To levy a claim of induced infringement, "[t]he

---

[6] The Court will not go so far as to hold all of the claims depending from claims 2, 6, and 15 patent-ineligible at the current stage. Many of these claims depend not only from claims 2, 6, and 15, but from other claims as well, whose eligibility has not been challenged by Biomet. It bears noting, however, that the Court has reviewed the dependent claims. None of them add an inventive concept to the methods claimed in claims 2, 6, and 15: the provision of instruments, implants, and information. *See Internet Patents*, 790 F.3d at 1349 (holding that the dependent claims did not salvage the corresponding independent claims from a finding of ineligibility where they did not add an inventive concept). They relate only to the surgical methods and apparatuses also disclaimed in the '822 patent. For the purposes of this Order, it is sufficient to simply dismiss all of Puget's claims pertaining to patent claims 2, 6, and 15.

patentee must also show that the alleged infringer possessed the requisite intent to induce infringement, which [the Federal Circuit has] held requires that the alleged infringer knew or should have known his actions would induce actual infringements. *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc*., 845 F.3d 1357, 1363-64 (Fed. Cir. 2017) (internal citations and quotations omitted). "For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Lifetime Indus., Inc. v. Trim-Lock, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig*., 681 F.3d 1323, 1339 (Fed. Cir. 2012)).

Biomet believes Puget has "failed to plead any factual basis from which to draw an inference of the requisite intent or knowledge of infringement …" for induced infringement. [DE 24 at 22] In particular, Biomet argues that the complaint fails to allege that Biomet provided instructions related to the accused devices either after the '822 patent issued or after Hudson Surgical sent a notice letter in July 2011, which is when Biomet would have obtained knowledge of the patent. This argument is misplaced. The complaint clearly alleges that Biomet made its Vanguard and Microplasty products (the accused products) available "since at least March 2005." [DE 1 ¶ 39] "[S]ince at least March 2005" does not exclude, but rather includes the period of time post-dating July 2011, when Biomet allegedly knew of the '822 patent. Regardless, the Federal Circuit has held allegations of induced infringement sufficient where the patent owner made an adequate pleading of intent by alleging knowledge of the patent and plausibly pleading that defendants' customers performed the claimed method. *Lifetime*, 869 F.3d at 1380 (citing *Bill of Lading*, 681 F.3d at 1339, 1341-42). Here, Puget alleges that Biomet knew

about the '822 patent since July 2011 at the earliest, when Hudson Surgical sent a letter notifying Biomet of the patent's issuance and alerting it to several potentially infringing products. [DE 1 ¶¶ 20-21, 36] Puget next alleges that Biomet provided instructions to and induced orthopedic surgeons to infringe on one or more claims of the '822 patent, and then, using claim 5 as illustrative, lays out step-by-step allegations of how those surgeons followed Biomet's instructions, which purport to describe methods infringing on the '822 patent. *Id.* ¶¶ 38-46. Therefore, Puget has plausibly pled that Biomet had the requisite intent to infringe.

The second form of indirect infringement, contributory infringement, occurs when a party sells "a component of a patented machine … constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use …." 35 U.S.C. § 271(c). This claim requires a plaintiff to show that the defendant "'knew that the combination for which its components were especially made was both patented and infringing' and that defendant's components have 'no substantial non-infringing uses.'" *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (quoting *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004)).

Puget alleges that Biomet has made, offered, and sold at least one component of the '822 patent – the tibial resection block – with knowledge that it was a material part of invention. [DE 1 ¶¶ 48-49] The tibial resection block, as Puget further alleges, "is not a staple article or commodity of commerce suitable for substantial noninfringing use." *Id.* ¶ 50. Biomet argues that the latter of these two statements merely parrots the statutory language and does not set forth a factual basis explaining how the tibial resection block "can only be used with the method claimed in claims 1, 5, and 14, and cannot be used in any other way or with any other method."

[DE 24 at 24] In support, Biomet cites *Bill of Lading* for the proposition that Puget must "plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." [DE 29 at 15 (quoting 681 F.3d at 1337)] While Puget's allegations might come off as conclusory, "many courts post-*Iqbal* have not demanded detailed factual allegations that the defendants' products lack substantial noninfringing uses." *Crypto Research, LLC v. Assay Abloy, Inc.*, 236 F. Supp. 3d 671, 688 (E.D.N.Y. 2017) (citing *Conair Corp. v. Jarden Corp.*, No. 13-cv-67020, 2014 WL 3955172, *4 (S.D.N.Y. Aug. 12, 2014) (collecting cases)). The reason being the obvious difficulty for plaintiffs to plead a negative without the benefit of discovery. *Iron Gate Sec., Inc. v. Lowe's Cos.*, No. 15-cv-8814, 2016 U.S. Dist. LEXIS 34061, *11 (S.D.N.Y. Mar. 16, 2016).

The Court does not believe *Bill of Lading*'s language requires Puget to plead a null set under the plausibility standard of *Iqbal* and *Twombly*. *See Driessen v. Sony Music Entm't*, No. 2:09-cv-0140, 2013 U.S. Dist. LEXIS 120309, *7 (D. Utah Aug. 22, 2013) (concluding the same). To hold otherwise would be to require Puget to plead with specificity something that allegedly does not exist. *See id.* One exception to this rule, however, would be if Puget undermined its own allegations of contributory infringement with allegations of other substantial non-infringing uses elsewhere in the complaint. *Id.* Biomet raises this very issue by pointing to the complaint's inclusion of a quote from an alleged Biomet document, which states, "Microplasty Total Knee Instruments are designed for use with both traditional surgical methods as well as minimally invasive techniques." [DE 1 ¶ 40 (quoting DE 1-4)] According to Biomet, "[t]his allegation shows that the instruments can be used with many techniques, including traditional ones, and are not limited to use in the specific method claimed." [DE 24 at 25] But Puget's complaint alleges contributory infringement related to only one identified component:

the tibial resection block. [DE 1 ¶ 48] The quote relied on by Biomet is not specific to this component. Rather, it generally refers to a *set* of "instruments," which may include apparatuses and tools distinct from the resection block. For this reason, Biomet cannot argue that the corresponding reference to "traditional surgical methods" and "minimally invasive techniques" conclusively alleges that the resection block itself can be used in a non-infringing manner. The Court therefore cannot conclude that Puget has not alleged no substantial non-infringing uses. *Cf. Bill of Lading*, 681 F.3d at 1338-39 (plaintiff's own complaint alleged multiple uses of the accused products distinct from the alleged infringing use of scanning bills-of-lading).[7]

Because claims for induced and contributory infringement cannot survive absent an underlying act of direct infringement, the Court must still address whether the complaint contains sufficient allegations of direct infringement. *Bill of Lading*, 681 F. 3d at 1333 ("It is axiomatic that '[t]here can be no inducement or contributory infringement without an underlying act of direct infringement.'") (quoting *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004)). The Court concludes that it does. "To state a claim for indirect infringement ... a plaintiff need not identify a *specific* direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists." *Id.* at 1336 (emphasis in original). In addition,

_____

[7] Biomet further suggests that it cannot be held liable for contributory infringement if it designed the accused products prior to the issuance of the '822 patent. This argument holds no water. Nothing in the complaint indicates that Puget is seeking to hold Biomet liable for its actions prior to when it knew about the '822 patent. The problem, as Puget alleges, is that Hudson Surgical allegedly notified Biomet of the '822 patent and of Biomet's potentially infringing conduct once the patent issued, and that Biomet *continued* to make, offer, and sell the accused products. The cases Biomet cites in its reply brief do not support its argument. For example, Biomet cites *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920 (2015), for the proposition that "contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." [DE 29 at 17] So it does, and that's precisely what Puget has alleged here: knowledge of the '822 patent and of potential infringement by way of the July 2011 letter. To dispel any ambiguity, the claims for indirect infringement will be (and must be) limited in scope to Biomet's alleged conduct occurring after it obtained knowledge of the '822 patent. *See CG Tech. Dev., LLC v. Zynga, Inc.*, No. 2:16-cv-00859, 2017 WL 662489, *3 (D. Nev. 2017) (limiting claims of induced and contributory infringement to conduct occurring after defendant received letter notifying it of the patent-in-suit).

direct infringement in the inducement and contributory contexts may be pled through allegations of the sale of the accused product together with defendant's instruction manuals. *Susan McKnight, Inc. v. United Indus. Corp.*, 273 F. Supp. 3d 874, 886-87 (W.D. Tenn. 2017) (citing *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1204 (Fed. Cir. 2017) and *Cascades Computer Innovation, LLC v. Samsung Elecs. Co.*, 77 F. Supp. 3d 756, 767 (N.D. Ill. 2015)).

Here, Puget alleges that Biomet, without authorization, induced infringement by selling the accused knee arthroplasty products in this District and elsewhere in the United States, and that the subsequent use of these products indeed directly infringed on the claims of the '822 patent. [DE 1 ¶¶ 34-35] And for the purposes of contributory infringement, Puget alleges that Biomet sold the tibial resection block – a component of the '822 patent – and that the resection block was used by surgeons to directly infringe at least one claim of the patent. *Id.* ¶ 48. Puget further alleges that Biomet provided "manuals, surgical guides, written instructions, or other printed (or videotaped) training or instructive material" related to the accused products, and includes references to and excerpts from Biomet's own instruction manuals that parallel claim 5 of the '822 patent in its complaint. *Id.* ¶¶ 38, 40-46. Together, these allegations sufficiently set forth direct infringement in the induced and contributory infringement contexts. *See Susan McKnight*, 273 F. Supp. 3d at 886-87 (denying motion to dismiss induced and contributory infringement claims where plaintiff alleged third-party retailers sold infringing products along with defendant's instructions for use, thereby sufficiently alleging the required direct infringement). Moreover, all of the above allegations support the inference that "at least one direct infringer exists," *Bill of Lading*, 681 F. 3d at 1336, and Puget collectively identified "surgeons" who performed knee arthroplasty procedures using Biomet's accused products. [DE 1 ¶¶ 38, 48]

For all of these reasons, the Court will deny Biomet's request to dismiss Puget's claims of indirect infringement.

### 2. Willful Infringement

Puget alleges that Biomet's infringement in this case has been "willful" [DE 1 ¶ 51], such that enhanced damages may be found in this case. Under the Patent Act, the district court, at its discretion, "may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284; *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1926 (2016) ("A patent infringer's subjective willfulness, whether intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless."). "In applying this discretion, district courts are 'to be guided by [the] sound legal principles' developed over nearly two centuries of application and interpretation of the Patent Act." *Halo*, 136 S. Ct. at 1935 (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)). "Those principles channel the exercise of discretion, limiting the award of enhanced damages to egregious cases of misconduct beyond typical infringement." *Halo*, 136 S. Ct. at 1935.

As the Supreme Court noted in *Halo*, "[t]he sort of conduct warranting enhanced damages has been variously described in [its] cases" not only as "willful" and "egregious," but also as "wanton, malicious, bad faith, deliberate, consciously wrongful, flagrant, or—indeed— characteristic of a pirate." 136 S. Ct. at 1932. Citing *Halo*, Biomet urges the Court to dismiss Puget's allegations of willful infringement as sparse, conclusory, and bereft of any facts supporting egregious or wanton behavior. [DE 24 at 26-27] *Halo*'s effect on the pleading standard for willful infringement, however, remains unclear. *Compare John Keeler & Co. v. Heron Point Seafood, Inc.*, No. 14 Civ. 1652, 2016 WL 6839615, *4 n.2 (N.D. Ohio July 8, 2016) ("[*Halo*], in which the Supreme Court abrogated the two-part test for proving willful

infringement, may also affect the pleading standard."), *with Nanosys, Inc. v. QD Vision, Inc.*, No. 16 Civ. 01957, 2016 WL 4943006, *8 (N.D. Cal. Sept. 16, 2016) ("*Halo* did not address pleading standards at the motion to dismiss stage."); *see also Bio-Rad Labs. Inc. v. Thermo Fisher Sci. Inc.*, 267 F. Supp. 499, 501 (D. Del. 2017) (citing *Halo* and stating "[a]t the pleading stage, it is not necessary to show that the case is egregious").

But what is clear, is that, "[a]t a minimum, the discretion that *Halo* confers on district courts to award enhanced damages based on the nature of the specific misconduct in a given case counsels hesitation before dismissing allegations of willfulness at the pleading stage." *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16-cv-885, 2017 U.S. Dist. LEXIS 1243, *12 (S.D.N.Y. Jan. 4, 2017). To illustrate, the Supreme Court made clear that, "[a]s with any exercise of discretion, courts should continue to take into account *the particular circumstances of each case* in deciding whether to award damages, and in what amount." *Halo*, 136 S. Ct. at 1933 (emphasis added). Allowing allegations of willful infringement to advance past the pleading stage appears prudent, given that, in the opening round of litigation, the full extent of the circumstances accompanying a given case will seldom be readily apparent to the Court.

Biomet cites two cases in its reply brief in which the district courts dismissed allegations of willful infringement along the lines of Justice Breyer's concurring opinion in *Halo*, which added that "the Court's references to 'willful misconduct' do not mean that a court may award enhanced damages simply because the evidence shows that the infringer knew about the patent *and nothing more*." *Halo*, 136 S. Ct. at 1936 (Breyer, J., concurring) (emphasis in original). In both *Susan McKnight*, 273 F. Supp. 3d. 874, and *CG Tech.*, 2017 WL 662489 at *4 (D. Nev. Feb. 17, 2017), plaintiffs based their allegations of willful infringement and the requisite knowledge solely on the fact that they had sent a letter to defendants, notifying defendants of

their allegedly infringing conduct. *See generally, id.* The allegations that defendants continued to manufacture or sell the accused products after receiving the letters did not sufficiently allege willful infringement. *Id.*

This case is distinguishable. Here, not only did Hudson Surgical allegedly send Biomet a letter in July 2011 alerting Biomet to the '822 patent, potential infringement thereof, and purported need for a license [DE 1-2], but Biomet was also well acquainted with the '822 patent's parent (the '541 patent) since the commencement of the 2010 case. *See Global Tech Led, LLC v. Every Watt Matters, LLC*, Case No. 15-cv-61933, 2016 U.S. Dist. LEXIS 183122, **15-17 (S.D. Fla. Aug. 1, 2016) (denying motion to dismiss claims for willful infringement where plaintiff alleged defendants were aware of the parent patent application). In addition, although pled on information and belief, Puget alleges that despite Biomet's research and investigation into Puget's patent portfolio, Biomet deliberately "chose not to acquire or obtain a license to any rights in" the '822 patent. [DE 1 ¶ 55] Taken together, the Court finds these allegations to exceed those involving mere knowledge of the patent and "nothing more" envisioned by Justice Breyer.

Given the early stage of litigation and the need to account for the particular circumstances of this case in deciding whether enhanced damages should apply under § 284, *Halo*, 136 S. Ct. at 1933, the Court will deny Biomet's request to dismiss Puget's allegations of willful infringement. *See Bobcar*, 2017 U.S. Dist. LEXIS 1243 at *13 ("It is possible that further development of the facts of this case may reveal that it is not an 'egregious case' justifying enhanced damages, but at the pleading stage, especially in light of *Halo*, [plaintiff] has carried its burden."); *Finjan, Inc. v. ESET, LLC*, Case No. 3:17-cv-0183, 2017 U.S. Dist. LEXIS 40784, **10-11 (S.D. Cal. Mar. 21, 2017) (denying motion to dismiss allegations of willful infringement

but noting that defendant "may introduce evidence of its response to [plaintiff's] notice of infringement and the steps it took to address those contentions.").

## CONCLUSION

Based on the foregoing reasons, the Court hereby GRANTS in part and DENIES in part Biomet's Motion to Dismiss. [DE 23] The Court GRANTS Biomet's request to dismiss Puget's allegations of direct infringement of claims 2, 6, and 15, with prejudice. The Court DENIES Biomet's request that Puget be precluded from litigating this case under the doctrine of claim splitting. The Court lastly DENIES Biomet's request to dismiss Puget's claims for indirect and willful infringement.[8]

SO ORDERED.

ENTERED:  June 11, 2018

/s/ JON E. DEGUILIO
Judge
United States District Court

---

[8] To the extent Biomet remains concerned about the specificity of Puget's allegations, the Court's Local Patent Rules, which require the parties to exchange specific infringement contentions and documents at the outset of a case, should eliminate those issues. *See* N.D. Ind. L.P.R. 3-1; *see also Personal Audio, LLC v. Google, Inc.*, No. 1:15-cv-350, 2017 U.S. Dist. LEXIS 122635, *11 (E.D. Tex. May 15, 2017) ("The court refuses to require the detail that Google demands, especially in light of this district's Local Patent Rules, which require that a Plaintiff serve infringement contentions that must detail the accused devices and put Google on sufficient notice shortly after pleadings."); *Palmer Hamilton, LLC v. AmTab Mfg. Corp.*, No. 16-cv-522, 2016 U.S. Dist. LEXIS 157735, *3 ("[T]his court requires standardized pretrial disclosures that force both sides to lay out their core contentions element-by-element early in the case. Given that both sides will have to put their cards on the table relatively early in the case, motions attacking the pleadings are generally a waste of resources for the parties and the court.").